# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

TYBRIN CORPORATION,

        Plaintiff,  :  Case No. 3:08-cv-002

   -vs-                                          Magistrate Judge Michael R. Merz

                                              :

UNITED STATES DEPARTMENT
OF THE AIR FORCE, et al.,

        Defendants.

## DECISION AND ORDER

This Freedom of Information Act case is before the Court on cross-motions for summary judgment (Doc. Nos. 24, 34) as well as the Motion to Compel of Defendant $^{HMR}$Tech2 (Doc. No. 20), and the Motion to Strike of Defendant $^{HMR}$Tech2 (Doc. No. 39).

The parties unanimously consented to plenary magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) in their Fed. R. Civ. P. 26(f) Report (Doc. No. 15) and the case has been referred on that basis (Doc. No. 17).

In its Amended Complaint (Doc. No. 27), Plaintiff Tybrin Corporation seeks a declaration that certain emails it sent to the United States Department of the Air Force should not be released to Defendant $^{HMR}$Tech2 despite a determination by the relevant Air Force officials to release those documents. Tybrin claims the emails are exempt from disclosure under 5 U.S.C. § 552(b)(4) as "commercial or financial information obtained [by the United States] from a person and privileged or confidential." Tybrin also seeks an injunction against the United States permanently prohibiting release of the emails to $^{HMR}$Tech2. The United States has agreed in its Amended Answer "to turn

1

the document(s) over to the Court for incamera [sic] inspection and to await a determination by the Court on Plaintiff's request."  (Doc. No. 29 at 3.)

"Generally, FOIA cases are resolved on motions for summary judgment, once the documents in issue are properly identified." *New York Public Interest Group v. USEPA,* 249 F. Supp. 2d 327, 331 (S.D.N.Y. 2003), citing *Miscavige v. IRS,* 2 F.3d 366, 369 (11th Cir. 1993).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;  the requirement is that there be no *genuine* issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient

2

evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the

pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

The instant summary judgment motions are "true" cross motions in that Tybrin and $^{HMR}$Tech2 concede there are no disputed historical facts[1]. Rather, on the undisputed historical facts, the question is which party is entitled to judgment as a matter of law.

**Analysis**

5 U.S.C. § 552(b)(4) exempts from disclosure by the United States under the Freedom of Information Act "trade secrets and commercial or financial information obtained from a person and privileged or confidential." In the Amended Complaint, Tybrin narrows its claim to be that the emails constitute "commercial and confidential information which was voluntarily provided to the Air Force" (Doc. No. 27 at ¶ 23). Thus there is no claim that the information is either "financial"

---

[1]Characterization of the emails as "commercial or financial" and "privileged or confidential" is a matter of application of law to fact and thus might be thought to be a questions of ultimate fact, but there are no disputed historical facts.

or "privileged" within the meaning of § 552(b)(4). $^{HMR}$Tech2 does not dispute that Tybrin is a "person" within the meaning of the statute and does not claim that Tybrin was required or compelled to provide the emails to the USAF.

It is undisputed that on April 20, 2006, the United States Air Force awarded ten contracts under the Consolidated Acquisition of Professional Services program known as CAPS. Tybrin was one of the awardees. CAPS is a five-year indefinite delivery/indefinite quantity contract to supply services to the USAF. As Tybrin explains, the award of a contract by itself does not guarantee any work. Rather, work pursuant to the contracts continues to be awarded on a competitive basis. On May 20, 2007, Tybrin sent the first of the emails in suit to the USAF regarding the eligibility of $^{HMR}$Tech2 to receive actual work under the CAPS program. $^{HMR}$Tech2 also provides services to the USAF under the CAPS program. However, on July 2, 2007, the USAF disqualified $^{HMR}$Tech2 from further participation in the program, leading to the FOIA request which is in suit.

$^{HMR}$Tech2 asserts and Tybrin does not deny that there is a presumption in favor of release of documents under the FOIA so that the provider of documents to the Government who seeks an exemption has the burden of proving entitlement. ($^{HMR}$Tech2 Cross-Motion, Doc. No. 33 at 3, citing *Department of State v. Ray*, 502 U.S. 164, 173 (1991). FOIA exemptions are to be read narrowly because Congressional policy as enacted in the FOIA favors broad disclosure. *FBI v. Abramson,* 456 U.S. 615, 621 (1982).

Tybrin asserts that the emails in question are confidential within the meaning of the exemption and relies on *Critical Mass Energy Project v. Nuclear Regulatory Commission,* 975 F. 2d 871 (D.C. Cir. 1992)(en banc). There court adopted the following test:

> financial or commercial information provided to the Government on a voluntary basis is "confidential" for the purpose of Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained.

*Id*. at 879. The court made it clear in *Critical Mass* that it was the provider's practice which should

govern under this rule. The evidence here is unequivocal that Tybrin's practice is to keep matters such as the emails in question confidential, not only in the sense that they are not released to the general public, but also that there distribution within the corporation is controlled.

<sup>HMR</sup>Tech2 argues that these are legal arguments and legal arguments are customarily made publicly. The Court agrees with <sup>HMR</sup>Tech2 that legal arguments are ordinarily made to the public at large or at least to that segment of the public which is involved in the broad community of those who evaluate and critique legal arguments. But the test under *Critical Mass* is not whether the type of information involved is ordinarily made available to the public, but whether this particular provider of information to the Government makes this type of information generally available and Tybrin does not. In applying this rule strictly, this Court notes the value of categorical treatment of information for purposes of carrying out FOIA policy which the Critical Mass court gave as a rationale. *Id*. at 879, citing *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749(1989), and *FTC v. Grolier, Inc.*, 462 U.S. 19, 27-28 (1983).

The more difficult questions is whether the information sought to be protected is "commercial." <sup>HMR</sup>Tech2 asserts that legal or policy advocacy is not "commercial," relying on *New York Public Interest Group  v. USEPA*, 249 F. Supp. 2d 327 (S.D.N.Y. 2003). In that case Judge Hellerstein found that the submitting entity, General Electric, was a commercial entity but that fact was not controlling. *Id*. at 333. He noted that

> The information it submitted, however, does not reveal anything about the nature and character of GE's business, or its revenues, expenses or income, or anything that a commercial business would want to protect for fear of competitive injury. There has been no showing that the information had intrinsic commercial value to GE or to its competitors, or was used by GE in any aspect of its daily operations, or that GE had a commercial interest that could be compromised by its disclosure. GE submitted its analyses to advocate a policy position,  because it had a financial stake in the outcome of its meetings with the EPA and the OMB, and because it sought to convince the EPA to adopt its less expensive remedy in addressing GE's dumping of PCBs into the Hudson River.

*Id*. at 333-334, quoted in part by <sup>HMR</sup>Tech2 at Doc. No. 33, p. 7.

This authority certainly supports <sup>HMR</sup>Tech2's position. However, Judge Hellerstein also noted that "[c]ourts have expressed different definitions of 'commercial.'" *Id*. at 333. In *Public Citizen Health Research Group v. FDA*, 702 F. 2d 1280 (D.C. Cir. 1983), the court found documents were "commercial" so long as the provider had a "commercial interest" in them. *Id*. at 1290. That authority certainly supports Tybrin's position, as does *Baker & Hostetler LLP v. U.S. Department of Commerce*, 473 F. 3d 312 (D.C. Cir. 2006). Other authority cited by Tybrin is to the same effect. (See Doc. No. 35 at 6.) Given the predominant role of the District of Columbia Circuit in applying the FOIA, the absence of controlling authority in the Sixth Circuit, and the absence of persuasive argument by <sup>HMR</sup>Tech2 that the broader interpretation is inconsistent with Congressional intent, this Court elects to follow the D.C. Circuit definition. Under that definition, the emails are commercial within the meaning of § 552(b)(4).

Accordingly, Tybrin's Motion for Summary Judgment is granted and <sup>HMR</sup>Tech2's Cross-Motion is denied. The Motion to Compel (Doc. No. 20) and the Motion to Strike (Doc. No. 39) are moot.

The United States Air Force is permanently enjoined from releasing the May 20, 2007, email and the related emails it received from Tybrin, pursuant to 5 U.S.C. § 552(b)(4).

February 19, 2009.

s/ **Michael R. Merz**
United States Magistrate Judge
